UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LLOYD'S ACCEPTANCE CORP. d/b/a ) <br> LLOYD'S DEVELOPMENT COMPANY ) <br> and AFFORDABLE COMMUNITIES, LP, ) <br>          ) <br>     Plaintiffs,    ) <br>          ) <br>     v.       ) <br>          ) <br> AFFILIATED FM INSURANCE COMPANY, ) <br>          ) <br> and        ) <br>          ) <br> TRAVELERS PROPERTY CASUALTY ) <br> COMPANY OF AMERICA,   ) <br>          ) <br>     Defendants.    ) | No. 4:05 CV 1934 DDN |

**MEMORANDUM AND ORDER**
**REGARDING MOTIONS ON DISPOSITIVE MATTERS**

This action is before the court on the motions of plaintiffs Lloyd's Acceptance Corp. and Affordable Communities, LP and defendants Affiliated FM Insurance Company and Travelers Property Casualty Company of America for summary judgment (Docs. 170, 173, 180, 184, 198) and related motions (Docs. 155, 157, 299, 303.) The court heard oral argument on February 27, 2013.

**I.  BACKGROUND**

On August 25, 2005, plaintiffs Lloyd's Acceptance Corp. and Affordable Communities, LP, commenced this action against defendant Affiliated FM Insurance Company in the Circuit Court of the City of St. Louis. (Doc. 1-3.) On October 20, 2005, defendants removed the action to this court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction. (Doc. 1.) On December 13, 2006, the court stayed proceedings in this court pending the resolution of related proceedings in state court. (Doc. 50.) On September 15, 2010, plaintiffs filed a third amended complaint and named Travelers Property Casualty Company of America as a defendant. (Doc. 73.) On March 22, 2011, the court lifted the stay. (Doc. 89.)

In their complaint, plaintiffs allege breach of contract and vexatious refusal to pay claims separately against defendants Affiliated FM and Travelers. (Doc. 73.) Plaintiffs

seek actual damages in excess of $1,400,000.00, and pre-judgment and post-judgment interest. Plaintiffs also seek statutory damages, costs and attorney fees under Missouri statutes. (Id.)

## II.  MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs argue that the faulty workmanship exclusion provision in their insurance contract with Affiliated FM applies solely to defects in materials or the construction process. Alternatively, they argue that the provision is ambiguous and should be construed against Affiliated FM, who drafted the contract. (Doc. 199.)

In its first motion for summary judgment, Affiliated FM argues that the loss-in-progress and fortuity doctrines bar plaintiffs' insurance claim. In its second motion for summary judgment, Affiliated FM argues that several policy exclusions bar plaintiffs' claim and that plaintiffs cannot meet the ensuing loss exception. Affiliated FM further argues that because its arguments constitute reasonable cause for its failure to pay plaintiffs, the vexatious refusal to pay claim fails. (Docs. 171, 174.)

In its first motion for summary judgment, Travelers argues that plaintiffs' insurance claim did not fall within the effective dates of the policy and that the policy does not cover plaintiffs' loss. Travelers also argues that plaintiffs breached the policy contract by failing to provide timely notice of their claim. Finally, Travelers argues that considering the aforementioned arguments, the vexatious refusal to pay claim fails. In its second motion for summary judgment, Travelers incorporates Affiliated FM's first motion for summary judgment. (Docs. 181, 184.)

Plaintiffs also argue that Travelers' Second Motion for Summary Judgment Response Memorandum should be stricken because it raises new, inconsistent arguments and includes citations to Travelers' First Motion for Summary Judgment statement of facts without incorporating it. (Doc. 304.)

Defendant Affiliated FM moves to strike paragraph 39 of plaintiffs' complaint and for judgment on the pleadings for plaintiffs' claim under Mo. Rev. Stat. § 375.934, arguing that the statute does not provide a private cause of action. Defendant also moves for judgment on the pleadings for plaintiffs' claim under Mo. Rev. Stat. § 375.296, arguing that the claim omits the necessary allegation that Affiliated FM is unauthorized to issue insurance policies in Missouri. (Docs. 156, 158.)

### III. FACTUAL BACKGROUND

Plaintiff Lloyd's Acceptance Corp., a Nevada corporation, is the managing agent of plaintiff Affordable Communities, LP, a Nevada corporation. (Doc. 73 at ¶ 9; Doc. 172-1 at 4.) From 1993 to 2006, plaintiff Affordable Communities owned and operated the New Jefferson Arms apartments and adjacent parking garage in St. Louis, Missouri. (Id. at ¶ 9; Doc. 172-1 at 4, 52.) On July 19, 2002, Travelers issued a boiler and machinery policy to plaintiffs, which provided coverage from August 4, 2002 to August 3, 2003. (Doc. 182-1 at 1.) On August 5, 2003, Affiliated FM issued a California Standard Form Fire Insurance Policy to plaintiffs, which provided coverage from August 4, 2003 to August 4, 2004. (Doc. 200-1 at 1.)

The Jefferson Arms apartments contained four passenger elevators.[1] (Doc. 182-3.) During their ownership of the apartments, plaintiffs entered into elevator service agreements with Miller Elevator Company from 1993 to 1994 and Archway Elevator, Inc. from 1994 to 2004. (Docs. 172-5; 172-6.) Subsequently, plaintiffs retained Midwest Elevator to survey and recommend repairs. (Doc. 177-6 at 5.) On November 21, 2003, plaintiffs shut down one of the elevators due to Archway's inability to locate a replacement for a component used to control position and speed that failed in one of the elevators. (Doc. 264-16 at 1.) Archway recommended replacing two of the four elevators. (Id. at 2.)

To obtain another perspective, plaintiffs retained elevator consultant Joseph Stabler to examine the elevator system. (Doc. 172-3 at 27.) On January 14, 2004, Stabler examined the system and found steel suspension ropes with significantly reduced diameters and the majority of the elevator components impaired by pervasive amounts of metallic powder commonly known as red rouge.[2] (Doc. 172-2 at 2-3.) He further found that damage to the ropes and components was irreparable. (Id. at 9.)

On April 16, 2004, plaintiffs submitted a claim under their Affiliated FM policy with Stabler's findings to their insurance broker. (Doc. 264-6.) On December 10, 2004, Affiliated FM denied plaintiffs' claim for repair and replacement costs, stating that the

---

[1] One of the elevators, referred to by plaintiffs' as Elevator No. 1, did not function from the time plaintiffs purchased the building until at least the time another elevator, referred to by plaintiffs' as Elevator No. 2, broke down. (Doc. 177-4 at 39; Doc. 182-3.)

[2] According to Stabler's report, the steel suspension ropes used with elevators bear significant weight and consist of a sisal or manila core surrounded by wire strands in the form of a helix. The combination of surface contact and exposure to small amplitude vibrations causes the steel suspension ropes to fret, which produces red rouge. Routine inspection and lubrication of the ropes mitigate fretting. The permeation of red rouge into other elevator components can cause elevator systems to irreparably malfunction. (Doc. 172-2 at 3,7.)

policy did not cover the claim, exclusions barred coverage, and the ensuing loss exception did not apply.  (Doc. 264-8.)

Plaintiffs' insurance policy with Affiliated FM contains the following relevant provisions:

> **A. PERILS INSURED**
>
> This policy insures against all risks of direct physical loss or damage to the insured property except as excluded under this policy.
>
> * * *
>
> **E. PERILS EXCLUDED**
>
> **GROUP I.**   This policy does not insure against loss or damage caused directly or indirectly by or resulting from any of the following.  Loss or damage is excluded regardless of any other cause or event whether or not insured under this policy that contributes concurrently or in any sequence to the loss or damage.
>
> [enumerated list of perils]
>
> **GROUP II.**   This policy does not insure against loss or damage caused by the following perils; however, if loss or damage not excluded results, then that resulting damage is covered.
>
> 1. Wear and tear, gradual deterioration, inherent vice, latent defect, vermin or insects.
>
> 2. Defects in materials, faulty workmanship, faulty construction or faulty design.
>
> * * *
>
> 4. . . . rust; corrosion.
>
> 5. Contamination, including but not limited to pollution.
>
> 6. Centrifugal force on rotating or moving parts of machinery; electrical, mechanical, or structural breakdown of machinery or equipment, including moving or stationary parts within or forming an integral part of such machinery or equipment.
>
> * * *
>
> 9. Electric or magnetic injury or disturbance of any kind.

(Doc. 200-1 at 10, 19, 22-23.)  The policy also contains a business interruption endorsement to recover lost rental income "[r]esulting from direct physical loss or damage insured by this policy."  (Id. 32-34.)  Plaintiffs paid an additional premium for a boiler and

- 4 -

machinery endorsement, which eliminated the Group II machinery and equipment exclusion. (Id. at 35-36.)

In March 2008, after reviewing Archway Elevator's service tickets, Stabler determined that the red rouge existed during the effective dates of the Travelers insurance policy. On May 9, 2008, plaintiffs submitted a claim in the amount of $1,968,736.51 for property damage and loss of rental income to Travelers. On February 6, 2009, Travelers denied the claim, stating that investigation did not reveal a covered loss during the applicable time period.

Plaintiffs' insurance policy with Travelers contains the following relevant provisions:

**A. COVERAGE**

We will pay for direct damage to Covered Property caused by a Covered Cause of Loss.

\* \* \*

**2. Covered Cause of Loss**

A Covered Cause of Loss is an "accident" to an "object."

\* \* \*

**F. ADDITIONAL CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

\* \* \*

**6. Other Insurance**

(a) You may have other insurance subject to the same plan, terms, conditions and provisions as the Insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable limits under this Coverage Part bear to the Limits of Insurance of all insurance covering on the same basis.

(b) If there is other insurance covering the same loss or damage, other than that described in (a) above, we will pay only the amount of covered loss or damaged [sic] in excess of the amount due from that other insurance, whether you can collect on it or not.

In no case will we pay more than the applicable limits.

**7. Policy Period, Coverage Territory**

Under this Coverage Part:

a. The "accident" must occur:

> (1) During the Policy Period shown in the declarations . . .
>
> * * *
>
> **G. DEFINITIONS**
>
> **1. "Accident"** means a sudden and accidental breakdown of the "object." At the time the breakdown occurs, it must become apparent by physical damage that requires repair or replacement of the "object" or part of the "object."
>
> None of the following is an "accident":
>
> a. Depletion, deterioration, corrosion, erosion, or wear and tear, unless a sudden or accidental breakdown ensues;
>
> * * *
>
> **7. "Object" means:**
>
> * * *
>
> b. "Object" does not mean any:
>
> * * *
>
> (11) Conveyor, crane, elevator, escalator or hoist, but not excluding any electrical machine or electrical apparatus mounted on or used with this equipment.

(Doc. 182-1 at 12, 22-25.)  The policy also contains a business interruption provision, which states "We will pay your actual loss of 'business income' from a total or partial interruption of business caused solely by an "accident" to an "object" . . ." (Id. at 12.)  It further contains a provision that required plaintiffs to promptly notify Travelers of covered losses.  (Id. at 18-19.)  Finally, the policy contains a provision that states, "We will not pay you if the loss or damage is to property that is obsolete or useless to you."  (Id. at 20.)

## IV.  SUMMARY JUDGMENT STANDARD

Courts grant summary judgment when the pleadings and evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party.  Rademacher v. HBE Corp., 645 F.3d 1005, 1010 (8th Cir.

2011). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Scott v. Harris, 550 U.S. 372, 379 (2007).

## V. DISCUSSION

### A. Plaintiffs' Motion for Partial Summary Judgment (Doc. 198)

Plaintiffs argue that the faulty workmanship exclusion in the Affiliated FM policy applies to construction defects and does not apply to the negligent repair or maintenance of completed projects. Alternatively, plaintiffs argue that the provision should be construed against its drafter, defendant Affiliated FM, due to its ambiguous nature. Affiliated FM argues that the exclusion is not limited to the construction process.

The interpretation of a contract is a question of law for the court. Four Seasons Lakesites, Inc. v. HRS Properties, Inc., 317 S.W.3d 193, 200 (Mo. Ct. App. 2010). "The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." Id. To ascertain the intent of the parties, "the terms of the contract are read as a whole and given their plain, ordinary, and usual meaning." Id. "A contract is ambiguous only if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain." Id.

"The general rules for interpretation of other contracts apply to insurance contracts as well. The key is whether the contract language is ambiguous or unambiguous." Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 301–02 (Mo. banc 1993). When there is ambiguity in an insurance policy, courts must interpret the policy in favor of the insured. Bellamy v. Pacific Mut. Life Ins. Co., 651 S.W.2d 490, 496 (Mo. banc 1983). However, "where insurance policies are unambiguous, they will be enforced as written." Rodriguez v. Gen. Accident Ins. Co. of Am., 808 S.W.2d 379, 382 (Mo. banc 1991). "Whether an insurance policy is ambiguous is a question of law." Martin v. U.S. Fidelity and Guar. Co., 996 S.W.2d 506, 508 (Mo. banc 1999). Missouri courts often use dictionaries to determine the plain and ordinary meaning of contract language that is not defined in the subject policy. Shahan v. Shahan, 988 S.W.2d 529, 535 (Mo. banc 1999). And the context of such language must also be considered. Wilshire Construction Company v. Union Electric Company, 463 S.W.2d 903, 906 (Mo. 1971).

The provision at issue follows:

> **GROUP II.** This policy does not insure against loss or damage caused by the following perils; however, if loss or damage not excluded results, then that resulting damage is covered.

* * *

>   2. Defects in materials, faulty workmanship, faulty construction or faulty design.

(Doc. 200-1 at 22.)

The term "faulty workmanship" is not defined in the policy issued by Affiliated FM. Therefore, the court considered how the term is used in ordinary English parlance, e.g., how it is defined in an English dictionary.  "Workmanship" is defined as (1) the art or skill of a workman: *also*: the quality imparted to a thing in the process of making, or (2) something effected, made, or produced: WORK.  See http://www.merriam-webster.com/dictionary/workmanship (last viewed on September 8, 2013).  Considering solely the dictionary definitions, the language of the faulty workmanship provision could support either side's interpretation.  However, context must be considered.

When considering issues of interpretation, Missouri courts have invoked the maxim *noscitur a sociis* – "a word is known by the company it keeps."  Pollard v. Bd. of Police Com'rs, 665 S.W.2d 333, 341 n.13 (Mo. 1984); cf., Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961); Edward Lowe Inds., Inc. v. Mo. Div. of Empl. Security, 865 S.W.2d 855, 863 (Mo. Ct. App. 1993).  Otherwise stated, "[t]he meaning of a word can be ascertained by referring to other words or phrases associated with it."  State v. Bratina, 73 S.W.3d 625, 627 n.5 (Mo. 2002).  The phrases surrounding "faulty workmanship" relate to defects that occurred before or during a construction activity.  Accordingly, the term "faulty workmanship" means "faulty skill of a workman before or during a construction activity."

The court can find no Missouri case interpreting "faulty workmanship" provisions, but other courts have interpreted such provisions similarly.  See e.g., BSI Constructors, Inc. v. Hartford Fire Ins. Co., 705 F.3d 330, 333 (8th Cir. 2013) ("[B]ecause their negligent conduct was part and parcel of the construction process as a whole, [the conduct] falls within a process definition of "workmanship.") (applying Missouri law); Federated Dept. Stores, Inc. v. M.J. Clark, Inc., 2007 WL 2088581, *5 (N.D. Ill. 2007); Otis Elevator Co. v. Factory Mut. Ins. Co., 353 F. Supp. 2d 274, 281 (D. Conn. 2005); City of Burlington v. Hartford Steam Boiler Inspection & Ins. Co., 190 F. Supp. 2d 663, 672 (D. Vt. 2002); see also 11 Couch on Ins. § 153:79.

Accordingly, plaintiffs' motion for partial summary judgment is granted.

**B. Defendant Affiliated FM's First Motion for Summary Judgment (Doc. 170)**

Defendant Affiliated FM argues that the loss-in-progress doctrine and the fortuitous loss requirement bar plaintiffs' claim for breach of contract because plaintiffs knew or should have known of the loss prior to their agreement with Affiliated FM.

All-risk coverage permits recovery for "all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." Missouri Commercial Inv. Co. v. Employers Mut. Cas. Co., 680 S.W.2d 397, 400 (Mo. Ct. App. 1984).  "A fortuitous event is one which to the knowledge of the parties, is dependent upon chance." John Q. Hammons Hotels, Inc. v. Factory Mut. Ins. Co., 2003 WL 24216814, *6 (W.D. Mo. 2003).  "When the damage manifests itself and continues into a successive carrier's coverage period, the continuous damage is no longer unusual, unexpected, or unforeseen and, therefore, it is not covered." Id.

"The . . . loss in progress [doctrine is] generally considered to be part of the 'fortuity' requirement that runs throughout insurance law." 7 Couch on Ins. § 102:9.  It is "a fundamental principle of insurance law [which provides] that an insurer cannot insure against a loss that is known or apparent to the insured. " United Capitol Ins. Co. v. Hoodco, Inc., 974 S.W.2d 572, 574 (Mo. Ct. App. 1998).  The doctrine "operates only where the insured is aware of a threat of loss so immediate that it might fairly be said that the loss was in progress and that the insured knew it at the time the policy was issued or applied for." Id. "[I]nsurers whose policy terms commence after initial manifestation of the loss are not responsible for any potential claim relating to the previously discovered and manifested loss." John Q. Hammons Hotels, 2003 WL 24216814 at *5. Manifestation is defined as "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." Id. The proper inquiry is "whether the insured was or should have been aware of appreciable damage," and "whether the insured appreciated the specific defect or reason behind the damage" is irrelevant. Id. at *6.  Accordingly, for summary judgment, Affiliated FM must show that no genuine issue exists regarding whether, prior to the application for or the issuance of Affiliated FM's policy, appreciable damage occurred and plaintiffs knew or should have known about the loss such that a reasonable person would know the policy's notification duty had been triggered.

To support the argument regarding plaintiffs' knowledge, Affiliated FM adverts to the statements of Miller Elevator employees, Archway employees, and plaintiffs' employees. The court first considers the statements of Miller Elevator employees and plaintiffs' employees.  The statements made by Miller employees concern wear and tear, which is expressly excluded by the Affiliated FM policy, and thus could not have triggered a duty to

notify. (Doc 172-5 at 3.) Although statements made to plaintiffs and by their employees reveal a history of elevator malfunction, they similarly do not unambiguously implicate a duty to notify. (See e.g., Doc. 172-9 at 19-20; Doc. 172-10 at 7; Doc. 172-20 at 6-7, 14.) Indeed, the cause of the loss itself is disputed as discussed below.

Affiliated FM also points to the deposition testimony of plaintiffs' employee John Burke who specifically testified that he observed red rouge throughout the duration of his employment from October 2000 to April 2004. (Doc. 172-19 at 26, 101.) However, his testimony also indicates that he did not understand the significance of the red rouge. (Id.) Whether he should have known that it triggered a duty to notify under the policy remains a disputed issue of fact.

Affiliated FM also references the conduct and statements of Archway employees. The record indicates that Archway employees observed red rouge prior to the effective dates of the Affiliated FM policy. (Doc. 172-3 at 10, 15; Doc. 172-4 at 19; Doc. 172-7 at 7-9.) However, their actual or constructive knowledge regarding the significance of red rouge is not conclusively established. (Doc. 172-3 at 16; Doc. 172-4 at 15; Doc. 172-7 at 7-9.) Further, the record indicates that Archway employees did not discuss red rouge with plaintiffs' employees. (Doc. 172-3 at 18.)

Affiliated FM argues that because Archway was plaintiffs' agent, the knowledge of Archway is imputed to plaintiffs. Under Missouri law, to establish an agency relationship, (1) "the principal must have the right to control the conduct of the agent with respect to matters entrusted to the agent" (2) "[the] agent must be a fiduciary of the principal" and (3) "the agent must be able to alter legal relationships between the principal and a third party." State ex rel. McDonald's Corp. v. Midkiff, 226 S.W.3d 119, 123 (Mo. 2007). "[A] party alleging agency has the burden of proof regarding both the fact of the agency and the scope of the agent's authority." United Missouri Bank, N.A. v. Beard, 877 S.W.2d 237, 239-40 (Mo. Ct. App. 1994). Affiliated FM fails to meet its burden because the court finds no evidence supporting Archway's ability to alter legal relationships between plaintiffs and third parties.

Affiliated FM also argues that plaintiffs' nondelegable duty as a common carrier to maintain elevators causes Archway's knowledge to be imputed to plaintiffs. Under Missouri law, "owners of elevators have been considered common carriers who owe passengers the highest degree of care." Davidson v. Otis Elevator Co., 811 S.W.2d 802, 804-05 (Mo. Ct. App. 1991). The duty is nondelegable; that is, "a common carrier cannot, by contract with an independent contractor, evade the carrier's liability for the contractor's negligence." Virgil v. Riss & Co., 241 S.W.2d 96, 99 (Mo. Ct. App. 1951). However, the

common carrier duty runs to third parties and concerns tort liability, and the court can find no authority that knowledge is imputed as a result of this duty.  See id. ("As to such negligence and as between defendant and third parties, the contractor would remain in the capacity of agent of the carrier."); see also Restatement (Second) of Torts § 422 (1965). Further, even assuming that Archway's knowledge is imputed to plaintiffs, the nature of Archway's knowledge is disputed.

Accordingly, defendant Affiliated FM's First Motion for Summary Judgment is denied.

**C. Defendant Affiliated FM's Second Motion for Summary Judgment (Doc. 173)**

Affiliated FM argues that the policy excludes plaintiffs' claim and that plaintiffs' claim does not fall under the ensuing loss exception.  Affiliated FM also moves for summary judgment on plaintiffs' vexatious refusal to pay claim.  Specifically, Affiliated FM argues that plaintiffs' claim is excluded because it is attributable to gradual deterioration, inherent vice, faulty workmanship, rust, corrosion, contamination, and electric and magnetic injury.  Plaintiffs argue that Affiliated FM waived these exclusions by failing to raise them as affirmative defenses in responsive pleadings.  Plaintiffs further argue that Affiliated FM misinterprets the policy and that the policy provides coverage because their claim is attributable to the breakdown of machinery or equipment.

Under Fed. R. Civ. P. 8(c), "[g]enerally, failure to plead an affirmative defense results in a waiver of that defense."  First Union Nat. Bank v. Pictet Overseas Trust Corp., Ltd., 477 F.3d 616, 622 (8th Cir. 2007).  However, the Eighth Circuit has held that "when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal."  Id. (internal citations omitted).

In Cameron Mut. Ins. Co. v. Harco Nat. Ins. Co., 2009 WL 5214899, *3 (E.D. Mo. 2009), the court found that the defendant's specific denial of the allegation that the policy provided coverage in its answer sufficiently apprised the plaintiff of its intention to rely on policy exclusions.  Here, Affiliated FM's answer stated that "The Plaintiffs' claims described in the Amended Complaint . . . are excluded by the terms, conditions, exclusions and limitations in the Affiliated Policy."  (Doc. 79 at 10.)  Plaintiffs attached Affiliated FM's policy to their amended complaint. (Doc. 73-1.)  Further, except for its reliance on the electric and magnetic injury exclusion, the exclusions raised in Affiliated FM's motion for summary judgment are also discussed in the original denial of claim letter, dated December 10, 2004.  (Doc. 264-8.)  Finally, plaintiffs make no argument that they suffered

- 11 -

unfair surprise.  Accordingly, the court concludes that Affiliated FM has not waived these exclusions as affirmative defenses.

Under Missouri law, insurers bear the burden of proving that exclusions are applicable, and courts construe exclusion clauses strictly against insurers.  Jensen v. Allstate Ins. Co., 349 S.W.3d 369, 374-75 (Mo. Ct. App. 2011).  The parties' arguments turn on the effect of a loss falling under the Group II exclusion categories.  Affiliated FM argues that falling under any Group II category results in exclusion.  Plaintiffs argue that falling under a Group II category is irrelevant if the loss is otherwise covered.  Otherwise stated, plaintiffs maintain that falling within a Group II category excludes only where solely Group II categories cause the loss.  The policy states:

> **E. PERILS EXCLUDED**
>
> **GROUP I.**  This policy does not insure against loss or damage caused directly or indirectly by or resulting from any of the following.  Loss or damage is excluded regardless of any other cause or event whether or not insured under this policy that contributes concurrently or in any sequence to the loss or damage.
>
> [enumerated list of perils]
>
> **GROUP II.**  This policy does not insure against loss or damage caused by the following perils; however, if loss or damage not excluded results, then that resulting damage is covered.
>
> 1. Wear and tear, gradual deterioration, inherent vice, latent defect, vermin or insects.
>
> 2. Defects in materials, faulty workmanship, faulty construction or faulty design.
>
> \* \* \*
>
> 4. . . . rust; corrosion.
>
> 5. Contamination, including but not limited to pollution.
>
> 6. Centrifugal force on rotating or moving parts of machinery; electrical, mechanical, or structural breakdown of machinery or equipment, including moving or stationary parts within or forming an integral part of such machinery or equipment.
>
> \* \* \*
>
> 9. Electric or magnetic injury or disturbance of any kind.

(Doc. 200-1 at 22-23.) Plaintiffs paid an additional premium for a boiler and machinery endorsement, which eliminated the Group II machinery and equipment exclusion. (Id. at 35-36.)

To support their argument, plaintiffs rely on Pace Properties, Inc. v. Am. Mfrs. Mut. Ins. Co., 918 S.W.2d 883 (Mo. Ct. App. 1996). In Pace, the policy also had two sets of exclusions. Id. at 886. The preface of the first set stated: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . ." Id. The preface of the second set stated: "We will not pay for loss or damage caused by or resulting from any of the following . . ." Id. The court found that the absence of the "regardless of" phrase implied that "the exclusions in paragraph two only apply when they are the sole cause of the loss." Id.

Similarly, here, the preface language of the first set of exclusions contains the "regardless of" phrase, and the absence of such language in the second set implies that the second set of exclusions apply only when they solely cause the loss. See Macheca Transp. v. Philadelphia Indem. Ins. Co., 649 F.3d 661, 673 (8th Cir. 2011); Indian Harbor Ins. Co. v. Clarinet, LLC, 2009 WL 398492, *10 (E.D. Mo. 2009).

Plaintiffs argue that the boiler and machinery endorsement covers their claim. Affiliated FM offers no argument that breakdown of machinery or equipment did not cause plaintiffs' loss, and thus, fails to meet its burden to demonstrate that the claim falls within an exclusion. Furthermore, Affiliated FM's arguments regarding the ensuing loss provision and vexatious refusal to pay hinge on its argument regarding exclusions. Accordingly, defendant Affiliated FM's Second Motion for Summary Judgment is denied.

**D. Defendant Travelers' First Motion for Summary Judgment (Doc. 180)**

Defendant Travelers argues that plaintiffs' loss did not occur within the effective dates of the policy, that the policy does not cover the claim, that plaintiffs failed to timely notify Travelers of the claim, that an "other insurance" provision precludes recovery, and that the vexatious refusal to pay claim fails.

The policy states:

**G. DEFINITIONS**

**1. "Accident"** means a sudden and accidental breakdown of the "object." At the time the breakdown occurs, it must become apparent by physical damage that requires repair or replacement of the "object" or part of the "object."

None of the following is an "accident":

a. Depletion, deterioration, corrosion, erosion, or wear and tear, unless a sudden or accidental breakdown ensues;

* * *

**7. "Object" means:**

* * *

b. "Object" does not mean any:

* * *

(11) Conveyor, crane, elevator, escalator or hoist, but not excluding any electrical machine or electrical apparatus mounted on or used with this equipment.

(Doc. 182-1 at 24-25.)

Travelers argues that the definition of "object" precludes plaintiffs' claim because it expressly omits elevators from coverage.  Plaintiffs argue that much of their claim consists of electrical machines and apparatuses mounted on or used with elevators and that to the extent the provision is ambiguous, it should be construed against the drafter, Travelers.

The provision is not ambiguous.  It excludes coverage for elevators but not for electrical machines or electrical apparatus mounted on or used with elevators.  To the extent that the categories are coextensive, the latter clause controls as it modifies the first clause, and such items are covered.  See A & L Holding Co. v. S. Pac. Bank, 34 S.W.3d 415, 419 (Mo. Ct. App. 2000) ("Indeed, '[g]enerally, in the construction of contracts, it is held that if the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should be held to operate as a modification and pro tanto nullification of the former.'").  To the extent that plaintiffs' claims pertains solely to elevators, the claim is excluded, but the record contains evidence sufficient to create a genuine issue of material fact regarding where this line is drawn.

Travelers also argues that the loss is not an accident and did not occur within the effective dates of the policy.  Travelers states that deterioration and wear and tear caused plaintiffs' loss and that such causes are excluded.  Travelers further notes that plaintiffs have failed "to provide a definitive event constituting an accident or even a date on which an alleged accident occurred."  Notably, the exception to the deterioration and wear and tear exclusion also requires an accident.  Accordingly, to determine whether Travelers is

entitled to summary judgment, the court must decide whether there is a genuine issue of material fact regarding whether an "accident" occurred during the effective dates of the policy.

According to the policy, an "accident" requires a "breakdown", which must be signified by apparent physical damage that requires repair or replacement. As stated above, the elevator breakdown leading to a prolonged loss of service occurred on November 21, 2003, and the effective dates of the policy are August 4, 2002 to August 3, 2003. (Doc. 182-1 at 1; Doc. 264-16 at 1.)  However, service tickets also indicate numerous breakdowns that required repair or replacement occurred prior to November 11, 2003 during the effective dates of the policy. (Doc. 228-42.)  Travelers does not address the argument that these earlier breakdowns could qualify as an accident, and the court finds that the issue is a genuine issue of material fact.

Travelers further argues that the provision denying payment for obsolete property bars plaintiffs' claim. However, the existence and extent of the obsolete nature of the property involved in plaintiffs' claim remains a disputed issue. (See Doc. 228-6 at 2; Doc. 228-7 at 10.)

Travelers next argues that plaintiffs' failure to promptly notify Travelers of the loss and the resulting prejudice bars the claim. Under Missouri law, where insured parties unreasonably delay notifying insurers of a claim and insurers can show prejudice, the insured parties' claims are barred. Weaver v. State Farm Mut. Auto. Ins. Co., 936 S.W.2d 818, 821 (Mo. 1997). Typically, determinations of whether notice is unreasonably delayed or whether insurers are prejudiced are questions for the jury. Tresner v. State Farm Ins. Co., 913 S.W.2d 7, 14 (Mo. 1995); Tuterri's, Inc. v. Hartford Steam Boiler Inspection & Ins. Co., 894 S.W.2d 266, 269 (Mo. Ct. App. 1995). However, where any reasonable person would conclude that notification did not occur within a reasonable time, the issue of whether notice is timely is a question of law. Tresner, 913 S.W.2d at 14. In any case, the issue of prejudice is an issue for the trier of fact. Id. at 15.

Here, plaintiffs explain that they did not realize the possibility that the Travelers policy might cover their claim until after Joseph Stabler's examination in March 2008. On May 9, 2008, approximately four years after they notified Affiliated FM of the claim but only a month after they discovered the possibility of coverage with Travelers, plaintiffs notified Travelers. In sum, the court does not find that all reasonable persons would conclude that notice was unreasonably untimely. Therefore, the issues remain questions of fact for the jury.

Travelers also argues that the "other insurance" provision precludes plaintiffs' claim because Affiliated FM's policy would fully cover any alleged damages. Finally, Travelers argues that based on its other arguments, plaintiffs' claim is not covered by its policy, and therefore, plaintiffs' vexatious refusal to pay claim fails. However, as discussed above, the extent of coverage under either policy, if any, include disputed issues of fact that remain for trial.

Accordingly, Travelers' First Motion for Summary Judgment is denied.

**E. Defendant Travelers' Second Motion for Summary Judgment (Doc. 184) and Plaintiffs' Motion to Strike Defendant Travelers' Second Motion for Summary Judgment Reply Memorandum (Doc. 303)**

In its Second Motion for Summary Judgment, Travelers incorporates Affiliated FM's First Motion for Summary Judgment including the related memorandum and statement of facts. In their response memorandum, plaintiffs argue that Travelers' motion failed to comply with Local Rule 7-4.01. Plaintiffs further state that Affiliated FM argues that plaintiffs knew or should have known about the loss prior to the inception of the Affiliated FM policy rather than the Travelers policy. Plaintiffs also state that invoking the loss-in-progress doctrine is inconsistent with Travelers' position that any loss occurred after the effective dates of the Travelers policy. In its reply brief, Travelers responds to arguments made in plaintiffs' response memorandum.

Subsequently, plaintiffs filed a motion to strike Travelers' reply brief, arguing that Travelers raised several arguments not raised in Affiliated FM's Motion and that Travelers' two arguments are inconsistent. Plaintiffs further argue that Travelers improperly relied on the statement of facts for Travelers' First Motion for Summary Judgment without incorporating it.

The Local Rules state that:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations.

Local Rule 7-4.01(E).

In its motion, Travelers did not literally attach a statement of facts but incorporated Affiliated FM's statement of facts. Plaintiffs cite no authority that Travelers' manner of incorporation is improper, and the court finds that in this case Travelers' First Motion for Summary Judgment complies with Local Rule 7-401.

Plaintiffs also argue that Travelers' reply memorandum should be stricken because the purpose of reply memoranda is to address arguments raised in response memoranda

and because Travelers' reply memorandum raised new arguments.  However, Travelers' reply memorandum merely responds to the arguments raised in plaintiffs' response memorandum.  Further, although plaintiffs argue that Travelers' arguments are inconsistent, the court finds no inconsistency in arguing both that manifestation of the loss arose prior to the effective date of the policy coverage and that no "accident", as defined by the policy, occurred during the effective dates.

Plaintiffs also argue that Travelers improperly relied on the First Motion for Summary Judgment's statement of facts without incorporating it.  However, neither the local rules nor the Federal Rules of Civil Procedure require a statement of facts.  Local Rule 7-4.01(A) states that, "If the motion requires consideration of facts not appearing in the record, the party also shall file all documentary evidence relied upon."  E.D.Mo. L.R. 7-4.01(A).  Rule 56 states that, "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record."  F. R. Civ. P. 56(c)(1)(A).   Travelers' statement of facts, although not incorporated into the second motion, remains a part of the record, and therefore, Travelers did not err by citing to it.

Accordingly, plaintiffs' motion to strike is denied.

Furthermore, for the reasons discussed above, the actual or constructive knowledge of plaintiffs and Archway and the existence of an agency relationship are disputed issues.  Accordingly, Travelers' Second Motion for Summary Judgment is denied.

**F. Defendant Affiliated FM's Motions for Judgment on the Pleadings (Docs. 155, 157)**

Affiliated FM moves to strike paragraph 39 of plaintiffs' complaint and for judgment on the pleadings for plaintiffs' claim under Mo. Rev. Stat. § 375.934, arguing that the statute does not provide a private cause of action. (Doc. 155.) Affiliated FM also moves for judgment on the pleadings for plaintiffs' claim under Mo. Rev. Stat. § 375.296, arguing that plaintiffs' complaint omits the necessary allegation that Affiliated FM is unauthorized to issue insurances policies in Missouri.  (Doc. 157.)

In their complaint, plaintiffs allege that defendant Affiliated FM violated Mo. Rev. Stat. § 375.934 and Missouri Insurance Regulations 20 C.S.R. 100-1.010 through 20 C.S.R. 100-1.050 in several alleged ways. (Doc. 73 at ¶ 39.)   Plaintiffs argue they are not pursuing a claim for relief under Mo. Rev. Stat. § 375.934.  The court agrees.  The prayer for relief in their amended complaint reflects that they are seeking relief under §§ 375.296 and 375.420.   The relevance of any fact that also may be a violation of § 375.934 will be

assessed at trial.  Accordingly, Affiliated FM's motion regarding Mo. Rev. Stat. § 375.934 is denied.

Plaintiffs do not contest Affiliated FM's motion for judgment on the pleadings for plaintiffs' claim under Mo. Rev. Stat. § 375.296 and agree not to pursue a claim under Mo. Rev. Stat. § 375.296.  (Doc. 159 at 3.)  Accordingly, the motion is sustained.

### VI.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that defendant Affiliated FM's motion for judgment on the pleadings regarding plaintiffs' claim under Mo. Rev. Stat. § 375.934 (Doc. 155) is denied.

**IT IS FURTHER ORDERED** that defendant Affiliated FM's motion for judgment on the pleadings regarding plaintiffs' claim under Mo. Rev. Stat. § 375.296 (Doc. 157) is sustained.

**IT IS FURTHER ORDERED** that the motion of plaintiffs Lloyd's Acceptance Corp. and Affordable Communities, LP for partial summary judgment (Doc. 198) is sustained.

**IT IS FURTHER ORDERED** that the motions of defendant Affiliated FM Insurance Company for summary judgment (Docs. 170, 173) are denied.

**IT IS FURTHER ORDERED** that the motions of defendant Travelers Property Casualty Company of America for summary judgment (Docs. 180, 184) are denied.

**IT IS FURTHER ORDERED** that the joint motion of defendants Affiliated FM Insurance Company and Travelers Property Casualty Company of America to amend Affiliated FM's Insurance Company's First Motion for Summary Judgment response memorandum (Doc. 299) is sustained.

**IT IS FURTHER ORDERED** that the motion of plaintiffs Lloyd's Acceptance Corp. and Affordable Communities, LP to strike defendant Travelers Property Casualty Company of America's Second Motion for Summary Judgment reply memorandum (Doc. 303) is denied.

**IT IS FURTHER ORDERED** that a status and scheduling hearing is set for October 18, 2013, at 10:00 a.m.

                                            /S/   David D. Noce
                                   **UNITED STATES MAGISTRATE JUDGE**

**Signed on  September 12, 2013.**